J-S08015-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| S.M.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.G. | : | |
| | : | |
| Appellant | : | No. 2102 EDA 2025 |

Appeal from the Order Entered July 10, 2025
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-CV-2016-03545

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:          **FILED AUGUST 11, 2026**

D.G. (Husband) appeals from the order entered by the Northampton County Court of Common Pleas, which accepted and adopted the hearing officer's recommendation regarding equitable distribution and alimony in this divorce matter between Husband and S.M.G. (Wife).[1]  Husband challenges various economic valuations, the award of certain assets, and the award and termination date for alimony.  After careful review, we affirm in part, reverse in part, and remand for further proceedings.

We discern the following factual and procedural history from the certified record.  Husband and Wife married in May 1996.  They had seven children together.  At the time of the 2022 hearings, the children were aged eight to twenty-two, with two children over the age of eighteen.  We glean from the

_____

[1] We utilize the parties' initials because the record in this matter has been sealed.

certified record that, as of now, at least three children remain under the age of eighteen; the rest are adults.

By agreement of the parties, Wife left her employment as a veterinarian in 2003 to care for the children. Wife homeschooled the children and was their primary caretaker. Wife remained unemployed until 2017, when she began operating an in-home, part-time pet euthanasia business. Husband was self-employed through his own construction business, and he worked part time for a few months of the year as a bartender. He would also purchase properties, renovate them, and sell or rent them. The parties' marital estate consisted primarily of various pieces of real estate, including the marital home, and multiple vehicles and bank accounts. The parties' bank accounts were commingled during the marriage and remained so for almost two years after separation. The parties also had a PNC home equity line of credit (HELOC), which encumbered one of the properties purchased during the marriage. After separation, Husband continued to utilize the HELOC to purchase other properties, as will be discussed *infra*.

Husband and Wife separated in November 2015, nineteen and a half years after marrying. Wife filed a divorce complaint in April 2016 and an amended complaint in May 2018. Hearings occurred on April 11[2] and October

_____

[2] The hearing transcript is dated as March 11, rather than April 11, 2022. The trial court stated that the parties agreed that the transcript was misdated and the hearing occurred on April 11. Although Wife claims in her brief that the hearing occurred on March 11, we observe that she agreed in her brief in
*(Footnote Continued Next Page)*

3, 2022 before the initial hearing officer. After the hearings, but before issuing a report, the initial hearing officer resigned from her position. On May 10, 2024, the trial court reassigned the matter to a new hearing officer. On February 5, 2025, the new hearing officer submitted a report, dividing the marital estate. On February 24, Husband filed exceptions to the hearing officer's report. On July 10, the trial court denied Husband's exceptions.

Husband timely filed this appeal.[3] He raises the following five issues for our review:

> A. Did the lower court commit an error of law, abuse its discretion, and capriciously disregard evidence presented by not utilizing the present value of $400,000.00 for the marital residence located at [] Lower Saucon Road?

---

opposition to Husband's exceptions, filed with the trial court, that the hearing occurred on April 11. **See** Wife's Brief in Opposition, 5/1/25, at 2. Moreover, at the end of the hearing, the hearing officer stated "that is it for today, 2:12 p.m., April 11." **See** N.T., 4/11/22, at 167. Thus, for clarity, we use April 11 as the date for this hearing; the discrepancy between March 11 and April 11 does not impact our analysis.

[3] The certified record does not contain the exhibits from the hearings, but some of the exhibits are included in the reproduced record. It is well settled that the burden is ultimately on the appellant to ensure that the record is complete on appeal. **See** Pa.R.A.P. 1921, Note; **see also, e.g., Mazzarese v. Mazzarese**, 319 A.3d 586, 596 (Pa. Super. 2024). It is also well settled that this Court may review and consider only items that are part of the certified record. **See, e.g., Mazzarese**, 319 A.3d at 596. However, "where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it." **Commonwealth v. Holston**, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*) (citation omitted); **see also** Pa.R.A.P. 1921, Note. Neither party disputes the accuracy of the exhibits included in the reproduced record, and both parties cite to the reproduced record. Thus, we will consider those exhibits even though they are not included in the certified record.

B. Did the lower court commit an error of law, abuse its discretion, and capriciously disregard evidence presented by affirming the decision of the Master in Divorce in the calculation of credits due to Wife from the PNC Line of Credit and thereafter including Husband's current residence as marital property?

C. Did the lower court commit an error of law, abuse its discretion, and capriciously disregard evidence presented by affirming the decision of the Master in Divorce to determine that the parties had only divided one bank account by agreement and thereafter determining that various other post-separation bank accounts were to be divided?

D. Did the lower court commit an error of law, abuse its discretion, and capriciously disregard evidence presented by affirming the decision of the Master in Divorce to grant the Ford Expedition to Husband?

E. Did the lower court commit an error of law, abuse its discretion, and capriciously disregard evidence presented by affirming the decision of the Master in Divorce to grant post-divorce alimony and by arbitrarily choosing a date on which the post-divorce alimony would terminate, which was not supported by the evidence?

Husband's Brief at 5-6 (excessive capitalization and suggested answers omitted).

Preliminarily, we note that, throughout his brief, Husband objects generally to the fact that the trial court adopted the recommendations of the hearing officer. He argues that because the hearing officer who authored the recommendations was not the same person who presided over the hearings, the trial court "should have examined the issues independently of the" hearing officer's recommendations. *Id.* at 13. Husband claims the second hearing

officer "did not have the benefit of observing and assessing the behavior and demeanor of the parties." *Id.*

Wife responds that Husband waived any objection to the trial court's procedure because he did not object to the new hearing officer taking over the case, and he did not raise this claim of error in his Appellate Rule 1925(b) statement. Wife's Brief at 10-12, n.1. We agree.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Trigg v. Children's Hospital of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020) (citation omitted). Relevantly,

> in order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction … one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*Thompson v. Thompson*, 963 A.2d 474, 475-76 (Pa. Super. 2008) (citation and brackets omitted).

The Rules of Appellate Procedure provide that, "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Similarly, issues not included in an Appellate Rule 1925(b) concise statement are waived. *See* Pa.R.A.P. 1925(b)(4)(vii). To be

considered on appeal, questions must also be stated in the appellant's statement of questions involved in their brief. **See** Pa.R.A.P. 2116(a); **In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017).

Here, when the trial court entered its order appointing a new hearing officer, the order stated that either party could object to the reassignment within ten days. Trial Court Order, 5/10/24 ("Any objections to the reassignment must be filed within 10 days of reassignment."). As Husband concedes, he did not object to this order or to the new hearing officer issuing a report, even though she was not the hearing officer who presided over the prior hearings. **See** Husband's Brief at 10 ("It is acknowledged that the Husband did not object to the appointment of [the new hearing officer] to serve as [hearing officer] for the purpose of reviewing the record and preparation of a [hearing officer's] Report.").

From our review of the record, it appears that the first time Husband raised an issue related to the second hearing officer was when he filed exceptions to the officer's report in February 2025. **See** Husband's Exceptions, 2/24/25. However, by that time, Husband had already waived this objection by failing to object within ten days of the reassignment. **See Thompson, supra**. By failing to timely object, Husband has waived any argument related to the reassignment of a new hearing officer. **See id.**

Additionally, we note that Husband did not raise an issue with the trial court's procedure of appointing a new hearing officer or the new hearing officer issuing her report based on the written record, in his Appellate Rule

- 6 -

1925(b) statement or the statement of questions involved in his brief. Therefore, he has also waived the issue for these reasons. *See* Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 2116(a); *M.Z.T.M.W.*, 163 A.3d at 466. Thus, we will not consider any of Husband's arguments related to the appointment of the new hearing officer.

Turning now to the merits of Husband's appeal, his first four issues challenge portions of the court's equitable distribution award. "In fashioning an equitable distribution award, 'the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S. § 3502.'" *Martin v. Martin*, 320 A.3d 113, 121 (Pa. Super. 2024) (citation and brackets omitted). Our standard of review is as follows:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Snyder v. Snyder*, 275 A.3d 968, 976 (Pa. Super. 2022) (citations, brackets, and quotation marks omitted).

"Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." *Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017) (citation omitted).

In his first issue, Husband argues that the trial court erred by adopting the hearing officer's use of the date of separation value of $290,000 for the marital residence. Husband's Brief at 17. Husband claims that the present value of the property, $465,000, should be used for equitable distribution purposes because Wife used marital funds and Husband's labor to make at least a portion of the renovations to the house. *Id.* at 21. Alternatively, Husband claims that, even "giving weight to Wife's argument that she should receive consideration for all renovations made to the residence post-separation," the trial court abused its discretion by not using the date of hearing value of $400,000, which represented the then-current value of the home without consideration of the post-separation repairs and improvements, according to Wife's own expert. *Id.* Husband argues that at a minimum, he is entitled to receive consideration for the market value increase in the home after separation. *Id.* at 21-22.

This Court has previously explained that in "determining the value of marital assets, a court must choose a date of valuation which best works economic justice between the parties. The same date need not be used for all assets." *Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (citations omitted). A trial court "has some discretion in choosing a valuation date, but

the preferred date of valuation is the date of distribution, not the date of separation." ***Busse v. Busse***, 921 A.2d 1248, 1260 (Pa. Super. 2007) (citation omitted). Indeed, our Supreme Court, in ***Sutliff v. Sutliff****,* 543 A.2d 534 (Pa. 1988), expressed a preference for distributing marital property with reference to its value at the date of distribution. ***See Sutliff***, 543 A.2d at 536. The High Court noted that it is implicit "in the statutory provisions governing equitable distribution that a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized." ***Id.*** Nevertheless,

> there are limited circumstances where it is more appropriate to value marital assets as of the date of separation. However, those circumstances are confined to situations where one spouse consumes or disposes of marital assets or there are other conditions that make current valuation difficult. [. . .] We will only reverse the decision of the lower court in regard to the setting of the date for the valuation of the marital assets on the basis of an abuse of discretion.

***Smith***, 904 A.2d at 19 (formatting altered and internal citations omitted).

Here, the trial court explained its rationale for valuing the marital home at $290,000, the value at the date of separation as follows:

> Husband [] argues that the Hearing Officer erred in utilizing the separation date in valuing the marital residence. [The trial court disagrees]. The record reflects that the home [. . .] was purchased in 2012, during the marriage, with the intention to renovate while living there. However, as of the date of separation in November 2015, the home was in a state of disrepair, lacking a functional kitchen, running water, and adequate heat. Wife provided testimony as to the significant repairs she undertook following separation, including repairs to the roof, electrical system, water cistern, and furnace. Wife also needed to remodel the kitchen and replace appliances. Wife expended a total of $164,898 of post-separation funds on necessary home

repairs, of which Husband contributed $10,000. Wife testified that she funded the repairs with her half of the marital bank accounts, and from working. The Hearing Officer concluded that the date of separation value of the marital home, $290,000, was appropriate, with the post-separation increase in the value of the home attributable to Wife's post-separation funds and efforts. We see no basis to disturb the Hearing Officer's finding where Husband does not appear to dispute either the property valuation or the extent of the repairs undertaken by Wife.

Trial Court Opinion (T.C.O.), 7/10/25, at 2-3 (record citations omitted).

We agree with Husband that this was an abuse of discretion. At the hearing, Wife presented the testimony of a real estate appraiser who had appraised the marital home twice. N.T., 10/3/22, at 5, 9. The appraiser provided multiple valuations for the home: $290,000—the value as of the date of separation in 2015; $325,000—the value as of March 2021, if the home was in its 2015 condition; $390,000[4]—the value as of March 2021; **$400,000—the value as of April 2022, if the home was in its 2015 condition**; and $465,000—the value as of April 2022 in its repaired condition. *Id.* at 12-13 (emphasis added).

Wife also testified that she and Husband purchased the marital home with the intention to renovate it. *See id.* at 30. The marital home was not livable at the time of purchase and was in significant disrepair at the time of separation. *See id.* at 32-33. Wife testified, in detail, about the extensive repairs she performed to the house and property after the separation. *See*

---

[4] Although the appraiser testified at the hearing that this value was $309,000, the parties agree that he misspoke because the value provided in his report was $390,000. *See* Husband's Brief at 20, n.2; Wife's Brief at 18, n.2.

*generally id.* at 31-64. We recognize that Wife spent $164,898 on repairs to the home and property, and Husband only contributed $10,000 and gutted the kitchen. *Id.* at 64, 132. Wife testified that the money she spent on repairs was from working and from her half of a bank account that she and Husband had split after separating. *See id.* at 68.

Wife's improvements to the home were reflected in the 2022 repaired value of $465,000. However, her appraiser stated that in 2022, at the time of distribution, the house would have been worth $400,000 in its 2015 unrepaired state. This number reflected the market value increase in the home between separation and distribution, and Husband was entitled to part of that increase in value.

This was not a case where the marital home was consumed or disposed of by one of the parties, thus rendering a current valuation impossible. *See* *Sutliff*, 543 A.2d at 536. Nor was this a case where there were other conditions that made current valuation of the home difficult. *Smith*, 904 A.2d at 19. Instead, Wife's appraiser's valuation of $400,000 accounted for market value increases, which both parties were entitled to benefit from. The value of $465,000 accounted for Wife's post-separation repairs, which only she was entitled to benefit from.

We understand that the hearing officer and the trial court wanted to credit Wife for repairs she made to the home after separation. This is why they did not use the value of $465,000. However, they failed to recognize that by not using the $400,000, they gave Wife a windfall for, and deprived

Husband of, the market value increase that happened after separation. Given our Supreme Court's preference for using a distribution date valuation for marital assets and the availability of a clear distribution date valuation for the marital home in its unrepaired state, the trial court abused its discretion by using the $290,000 valuation for the home, rather than the $400,000 valuation, which was much closer to the date of distribution. Husband's first issue merits relief.

In his second issue, Husband argues that the trial court erred by adopting the hearing officer's calculation of credits due to Wife from the PNC HELOC and then including Husband's current residence as marital property. Husband's Brief at 23. Husband acknowledges that he used the HELOC towards the purchase of two properties after separation, so he does not object to those properties being considered marital assets. *Id.* at 24. However, Husband objects to a proportionate share of his primary residence, the Pike Avenue property, which Husband purchased after separation, being considered a marital asset, because he testified that he did not use the HELOC to purchase that property. *See id.* Husband claims that he used only post-separation earnings to purchase the Pike property. *Id.* at 25. When he drew down money from the HELOC shortly after the Pike property purchase, it was because he needed working capital to pay the expenses of operating his business. *Id.*

The trial court disagreed and explained its rationale as follows:

- 12 -

Husband[] next [] argue[s] that the Hearing Officer erred in finding Husband's current residence to be marital property, and in providing credits to Wife arising from Husband's use of the home equity line of credit (HELOC). Specifically, during the marriage, Husband took out a line of credit against a marital property located [on] Nottingham Road, Allentown. Following separation, Husband continued to utilize the line of credit without Wife's permission, including borrowing $46,000 used to purchase a property located [on] Potomac Street, Allentown. Husband borrowed an additional $18,000 to purchase [] Nazareth Pike, Bethlehem. Husband also borrowed $56,636.24 contemporaneous to his purchase of [] Pike Avenue, Coopersburg, his current residence. As noted by the Hearing Officer, assets acquired after separation through the use of marital assets are marital property. 23 Pa.C.S.A. § 3501(a)(4). Here, Husband used marital assets, *i.e.* a line of credit encumbering a marital property, to buy additional real estate. Consequently, there is no error by the Hearing Officer in crediting Wife with the increased value of the real estate proportional to the HELOC funds used to purchase the properties.

T.C.O. at 3-4 (record citations omitted).

The record supports the trial court's decision. Wife testified that there was an advance of $56,636.24 taken from the HELOC on August 15, 2018, around the time that Husband purchased the Pike property. **See** N.T., 10/3/22, at 110-11. When asked if Husband had ever provided documentation to show he did not reimburse himself from the HELOC for the purchase of the Pike property, Wife stated "No." **Id.** at 111. Wife agreed that the value of the Nottingham property, which the HELOC was taken out against, was possibly decreased by Husband using that line of credit to purchase other property. **Id.** at 113.

- 13 -

Conversely, Husband testified that he drew money from the HELOC a little over two weeks after he purchased the Pike property. *See id.* at 227-28. He stated that he put this money into his business account because he had just purchased the Pike property. *See id.* at 227. Husband alleged that he did not use the HELOC money for the Pike purchase, instead he used the money for working capital for his business. *Id.* at 228. Husband later reiterated that he bought Pike wholly with cash that he owned, and it was non-marital. *Id.* at 264. Husband also conceded that he had been put in a better financial position to purchase properties by using the HELOC after separation. *See id.*

The hearing officer ultimately credited Wife's testimony, explaining in her report that:

> Husband purchased Pike Avenue on July 30, 2018. Sixteen days later, on August 15, 2018, Husband took an advance against the HELOC in the amount of $56,636.24. Husband testified that he believed he deposited this into his Hire a Husband bank account because he had a "crap load of bills" and needed working capital. The undersigned believes that Husband used this advance to effectively reimburse himself for the purchase of Pike Avenue.

Hearing Officer's Report at 15, n.9 (record citations omitted).

Thus, on appeal, Husband essentially asks us to reweigh the evidence and credit his testimony over Wife's testimony. It was the trial court's purview to weigh the evidence and decide credibility. *See Carney, supra*. We review the trial court's decision for an abuse of discretion, which is not found lightly. *See Snyder, supra*. We decline Husband's invitation to substitute our

- 14 -

judgment for that of the trial court. We discern no abuse of discretion in the trial court's determination that Husband used HELOC funds, *i.e.* marital assets, to reimburse himself for part of the Pike Avenue property purchase. Husband's second issue merits no relief.

In his third issue, Husband argues that the trial court erred in its distribution of the parties' bank accounts. Husband agrees that after the parties separated, they continued to commingle their money, until October 5, 2017. *See* Husband's Brief at 29. He claims they divided all the bank accounts at that time. *See id.* Husband claims that Wife's testimony supported that the parties separated all bank accounts in October 2017, and that she already received $29,096.93 as her share of these accounts. *See id.* at 27-28. At the equitable distribution hearing, Wife presented an exhibit detailing all accounts and only requested an additional $7,165 to equalize the bank funds. *Id.* at 28.

We review this issue mindful that:

> The Divorce Code does not specify a particular method of valuing assets. Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.

*Childress v. Bogosian*, 12 A.3d 448, 456 (Pa. Super. 2011) (citations, brackets, and quotation marks omitted).

The trial court adopted the hearing officer's recommendation of $38,484.39 to each party for the bank accounts, with Wife retaining her individual account of $5,442 and Husband retaining the remaining balance in the joint account of $996. It explained its rationale as follows:

> Husband [] asserts that the Hearing Officer erred in the distribution of the parties' bank accounts. We disagree. Testimony reflected that during the marriage, the parties commingled their finances in various joint accounts, and continued to maintain several joint accounts for approximately two years after separation. Wife testified that on October 5, 2017, she received a disbursement of $29,096.93, which was one-half of one joint account. Husband did not offer contradicting testimony or evidence. Consequently, the Hearing Officer awarded each party their own account and half of the remaining bank account balances, based upon the account statements provided. We find no error in equally dividing remaining account balances.

T.C.O. at 4 (record citations omitted).

This rationale is incorrect. The bank statement of October 2017 showed Wife received $29,096.93 from the parties' joint account, leaving a balance to Husband of $996. This transfer to Wife was her one-half estimated share of all marital accounts. Wife's Exhibit 4 showed the total value of all marital accounts as of October 2017. In her exhibit and at the hearing, Wife acknowledged receiving the $29,096.93 transfer from the parties' joint account and retaining her individual account of $5,442, and she stated that

- 16 -

she was only owed $7,165 as her one-half share of all the bank accounts. **_See_** Plaintiff's Exhibit 4; N.T., 4/11/22, at 69-72.

The hearing officer relied on the bank statements that Wife provided. The officer had Wife retain her individual account and Husband retain the joint account. The officer then equally divided the other accounts to award each party $38,484.39. This was error. The officer failed to acknowledge that when Wife received $29,096.93 in October 2017, the transfer was of the parties' joint account (leaving Husband less than $1,000 in the account), but represented Wife's one-half estimated share of all accounts. Thus, the trial court erred by awarding Wife $38,484.39, an additional $31,319.39 over the $7,165 she was owed. Husband's third issue merits relief.

In his fourth issue, Husband argues that the trial court erred by affirming the hearing officer's decision to grant the parties' 2016 Ford Expedition to Husband. Husband's Brief at 32. (The vehicle was titled solely in Husband's name). Husband asserts that the record is devoid of any evidence that Husband was requesting this vehicle. **_Id._** at 34. Husband argues that Wife should be credited with receiving the Ford Expedition at a net value of $12,807 because she testified that the value of the vehicle was $17,807 and the balance on the loan was $5,000. **_Id._** This was the vehicle Wife was driving at the time of the hearing. Husband acknowledges he did not object to the $17,807 valuation at the time of the hearing; "therefore, no further evidence to the contrary was necessary." **_Id._** at 35.

- 17 -

The hearing officer lumped all the parties' vehicles together and gave each vehicle a value. She used a value of $17,807 for the Expedition. She recommended that Husband be awarded all the vehicles and should pay Wife one half of the value of all of them. As the hearing officer explained:

> At issue are: (1) a 2016 Ford Expedition, valued at $17,807.00; (2) a 2005 Ford E-350 van, valued at $4,000.00; (3) a 2009 Ford E-350 box truck, valued at $4,000.00; (4) a Kubota, valued at $5,000.00; and (5) a Honda motorcycle, valued at $1,800.00. Husband shall retain all vehicles and shall provide Wife with half the vehicles' values, totaling $16,303.50.

Hearing Officer's Report at 16 (record citation omitted). We discern no abuse of discretion.

Here, the record supports the trial court's decision. Wife testified about multiple potential valuations for the Ford Expedition. She explained that she was driving the vehicle and making the payments on it, but it was titled in Husband's name. *See* N.T., 4/11/22, at 79. She testified to the balance on the loan when she began making the payments, what her monthly payment was, and the then-current balance of the loan, $5,000. *See id.* at 79-80. She provided a Kelly Blue Book valuation of the vehicle for $17,807. *Id.* at 81.

Husband now claims that the hearing officer should have assigned the vehicle a value of $12,807 ($17,807 value minus $5,000 loan). *See* Husband's Brief at 34.

The hearing officer and the trial court ultimately accepted Wife's Kelly Blue Book valuation of $17,807 for the vehicle and did not account for any

outstanding loan, which Wife testified that she had been paying. We assume Wife continued paying the loan. Thus, Husband was assigned the vehicle value unencumbered. No one has questioned who should pay the balance, if any, of the loan when the order was issued in 2025.[5] That Husband may not have wanted this vehicle, and would have preferred it be given to Wife, is not a basis for us to reverse the trial court's decision. We find no abuse of discretion in the value attributed to this vehicle or the award of this vehicle to Husband. Husband's fourth issue merits no relief.[6]

In his final issue, Husband argues that the hearing officer abused her discretion by granting alimony beyond Wife's requested date of December 31, 2024, and any further award of alimony was punitive to Husband. Husband's

_____

[5] Husband assails the delay between Wife's testimony about the vehicle's value and the hearing officer's report because the vehicle was a depreciable asset. However, as we explained above, Husband did not object when the trial court appointed a new hearing officer to decide the case, over two years after the first day of testimony before the original hearing officer. Moreover, in Husband's brief in support of his exceptions to the hearing officer's report, he did not raise an argument related to the time between Wife's testimony and the hearing officer's report, for his exception related to the Ford Expedition. Thus, he cannot now raise, for the first time on appeal, an argument that it was improper for the court to award him a depreciable vehicle multiple years after Wife's testimony about its value. *See* Pa.R.A.P. 302(a). Husband has waived this claim. *See id.*

[6] Husband also claims that he has not received the vehicle and will not receive it in the future. Wife claims there is nothing precluding Husband from taking possession of the vehicle, and he may take possession of it at any time. There are also various claims about whether one of the parties' children is now driving the vehicle and whether that claim is part of the evidence of record. Regardless, who currently has possession of the vehicle is not before us in this appeal.

Brief at 42. Husband alleges, without any citations for support, that it is a common practice for hearing officers to utilize the formula of one year of alimony or alimony *pendente lite* (APL) for every three years the parties were married and living together. *See id.* at 39. Because Husband and Wife were married and living together for nineteen years and six months, he contends that the award of alimony or APL should be for six years and six months, which would end on December 31, 2024. *Id.* Husband argues that the marital estate is sufficient to meet the reasonable needs of the parties through the equitable distribution award, and Wife has an appropriate employable skill as a veterinarian. *Id.* at 41-42. Moreover, because the hearing officer granted post-divorce alimony through "February 31, 2027," the trial court does not, and cannot, know which part of that date is incorrect—the month, day, and/or year. *Id.* at 42.

To begin, we observe that awards of alimony are within the sound discretion of the trial court and will not be disturbed absent an error of law or abuse of discretion. *Cook v. Cook*, 186 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted). Concerning alimony, this Court has said:

> Following divorce, alimony provides a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution. An award of alimony should be made to either party only if the trial court finds that it is necessary to provide the receiving spouse with sufficient income to obtain the necessities of life. The purpose of alimony is not to reward one party and punish the other, but rather to ensure that the reasonable needs of the person

who is unable to support herself through appropriate employment are met.

Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.

*Id.* at 1019-1020 (quoting ***Kent v. Kent***, 16 A.3d 1158, 1161 (Pa. Super. 2011)) (further citation, internal citations, and quotation marks omitted).

In determining "whether alimony is necessary and to establish the appropriate nature, amount, and duration of any alimony payments, the court is required to consider all relevant factors, including the 17 factors that are expressly mandated by statute." ***Id.*** at 1020 (footnote, citation, and emphasis omitted); ***see also*** 23 Pa.C.S.A. § 3701(b)(1-17).

The trial court awarded alimony to Wife through February 28, 2027. It explained its rationale as follows:

> Finally, Husband [] argues that the Hearing Officer erred in awarding Wife post-divorce alimony to a date that does not exist. The parties were married for 19.5 years prior to separating. The parties have seven children together, and by agreement of the parties, Wife homeschools the children. Wife is the primary caretaker of the children, two of [whom] have special needs. Further, by agreement of the parties, Wife left her employment as a veterinarian in 2003 to care for the parties' children. Wife remained unemployed until 2017, when she began operating an in-home pet euthanasia business, with an income in 2020 of $19,782. In 2018, an Order was entered granting Wife alimony pendente lite in the amount of $473 per month, although she testified that Husband's payments were inconsistent. The Hearing Officer appropriately analyzed [the] relevant factors and awarded Wife post-divorce alimony to compensate for Wife's diminished earning capacity resulting from the level of care required for the remaining minor children. We find no basis to revise the Hearing Officer's finding. Nonetheless, the

- 21 -

> Hearing Officer awarded alimony to continue to "February 31, 2027" which is clearly a date that does not exist. Consequently, the alimony award shall continue to February 28, 2027.

T.C.O. at 5-6 (record citations omitted).

The record supports the trial court's decision. Wife testified that the parties had seven children. N.T., 4/11/22, at 28. Wife had always homeschooled the children, which was a decision the parties made together. *Id.* at 29. She did not work from approximately 2003 to 2017 to care for the children. *See id.* at 40-41. In 2017, Wife got her veterinary license back and began doing part-time, in-home euthanasia of pets as it allowed her to still homeschool and care for the children. *See id.* at 41-43. As of the hearing, the children were ages eight to twenty-two, and Wife continued to homeschool multiple children. *Id.* at 28-29. Wife took the children to their appointments and many of their extracurricular activities and considered herself their primary custodian. *See id.* at 33, 35-36. Per the certified record, at least three of the children were still minors when the hearing officer's report was issued.

For the alimony termination date, the hearing officer erroneously selected February 31, 2027, so the trial court adjusted the alimony termination date to February 28, 2027. Husband's argument, that it was impossible for the trial court to know which part of this date was incorrect, is disingenuous. Clearly, the intent was to award alimony through the end of February 2027. The trial court agreed with the hearing officer that Wife was entitled to alimony, and, thus, it corrected the obviously erroneous

termination date. The trial court considered the statutory factors in determining the amount and duration of the alimony award. We discern no abuse of discretion.[7] Husband's final issue merits no relief.

In sum, we affirm the credit to Wife to account for Husband using HELOC funds to reimburse himself for part of the Pike Avenue property, the value and award of the Ford Expedition to Husband, and the award of alimony through February 28, 2027. We reverse the trial court's equitable distribution award regarding the value of the marital home and the distribution of the parties' bank accounts, as set forth above. We remand for the trial court to issue a new equitable distribution order that accounts for the value of the home and bank accounts, consistent with this decision.

Order affirmed, in part, and vacated, in part. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/11/2026

---

[7] We note that regarding alimony Husband again challenges the hearing officer's assessment of credibility, and the delay between the time of the hearing and the ultimate alimony order. We dismiss those arguments for reasons stated *supra*.